UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JORDAN MICHAEL DRAKE,<br><br>Defendant. | Case No. 1:19-cr-00402-DCN-1<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendant Jordan Michael Drake's Motion for Release from Custody Pending Sentencing. Dkt. 71. Pursuant to informal communications with the parties, the Court set an expedited briefing schedule. The Government opposed Drake's Motion. Drake did not file a Reply, and the time for doing so has now passed.

For the reasons outlined below, the Motion is DENIED.

## II. BACKGROUND

Drake was arrested on November 24, 2019, and was later indicted on charges of Attempted Coercion and Enticement of a Minor in violation of 18 U.S.C. § 2422(b) and Attempted Use of Interstate Facilities to Transmit Information About a Minor in violation of 18 U.S.C. § 2425. Dkt. 17. After Drake's arrest, a detention hearing was held on November 27, 2019. Prior to the hearing, United States Probation prepared a Pretrial Services Report recommending that Drake be detained pending trial. Dkt. 13-2. Probation's primary concern was Drake's mental health because Drake was then on suicide watch at

MEMORANDUM DECISION AND ORDER - 1

the Ada County Jail, and also had a long history of depression and two past suicide attempts. *Id*. at 4. Probation recommended that Drake be detained since there were no conditions which would reasonably assure his safety. *Id*. However, Drake was released from detention subject to certain terms and conditions. Dkt. 15. Drake performed well on pretrial release and complied with all of the terms of his pretrial release conditions. Dkt. 71-2, ¶ 5.

On April 8, 2021, after a four-day trial, a jury found Drake guilty on both counts.[1] After the jury was excused, Drake's counsel requested that Drake be released pending sentencing, while the Government argued detention was mandatory. The Court advised Drake and his counsel that it was concerned about Drake's mental health history and his risk of suicide, and ultimately remanded Drake to the custody of the United States Marshals Service. However, the Court stated it would reassess Drake's custody status pending sentencing if the defense provided additional information to address the Court's concerns regarding Drake's mental health.

Drake filed the instant motion on April 14, 2021, and submitted letters from two of his mental health providers. Dkt. 72-1. Both letters contend Drake has been consistently attending therapy, has not had any previous suicide attempts, and is at a low risk of suicide. The Government opposed Drake's Motion, arguing Drake has not shown exceptional circumstances to justify his release. Dkt. 72. The Government also contends the Court should be extremely concerned about Drake's risk of suicide and notes the letters from

---

[1] Drake's sentencing is set for July 27, 2021, at 4:00 p.m.

MEMORANDUM DECISION AND ORDER - 2

Drake's mental health providers conflict with statements Drake made to Probation and Ada County Jail staff following his arrest.

### III. LEGAL STANDARD

A defendant who has been found guilty of a "crime of violence" is subject to mandatory detention pending sentencing. 18 U.S.C. §§ 3156(a)(4)(C), 18 U.S.C. § 3143(a)(2). A "crime of violence" encompasses any felony under chapter 117, including attempted coercion and enticement of a minor. 18 U.S.C. § 3156(a)(4)(C); *see also United States v. Larue*, 478 F.3d 924, 925 (8th Cir. 2007) (noting that attempting to entice a minor to engage in unlawful sexual activity, in violation of 18 U.S.C. § 2422(b), is a crime of violence within the meaning of 18 U.S.C. § 3143(a) and 3156(a)(4)(C)). "Crimes of violence" require mandatory detention because they give rise to a presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community[.]" 18 U.S.C. § 3142(e)(2)(A).

Notwithstanding this mandatory detention requirement, a defendant may be released pending sentencing if he meets two statutory requirements. First, he must present "clear and convincing evidence that [he] is not likely to flee or pose a danger to the safety of any other person or the community if released[.]" 18 U.S.C. § 3143(a)(2). In determining whether this requirement is met, a court is guided by the factors set forth in § 3142(g), as well as the presumption that no conditions of release will assure community safety and appearance at required hearings. *See United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) ("The presumption is not erased when a defendant proffers evidence to rebut it; rather the presumption remains in the case as an evidentiary finding militating against

MEMORANDUM DECISION AND ORDER - 3

release, to be weighed along with the other evidence relevant to factors listed in § 3142(g)." (cleaned up)).

The § 3142(g) factors include: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics (including his character, physical and mental condition, family and community ties, employment, financial resources, past criminal conduct, history relating to drug or alcohol abuse, and supervision status at the time of the current offense); and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. 18 U.S.C. § 3142(g); *Hir*, 517 F.3d at 1086. Categorical grants or denial of release, untethered from an individualized determination, are impermissible. *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Instead, a court must conduct an "individualized evaluation" based on the statutory factors in 18 U.S.C. § 3142(g). *Id*.

Second, a defendant must also show there are "exceptional reasons why [his] detention would not be appropriate." 18 U.S.C. § 3145(c). The Ninth Circuit has outlined a non-exhaustive list of factors district courts may consider in evaluating whether "exceptional reasons" support release, including: (1) whether a defendant's crime was aberrational; (2) a defendant's significant social contribution; (3) whether the nature of the offense is so dissimilar to others in the same category defined in statute as to render it exceptional; (4) whether the defendant's expected prison sentence is not lengthy or "he will soon be free"; (5) whether circumstances exist that render hardships of detention unusually harsh for the defendant; (6) the benefit of uninterrupted treatment; (7) the effects of

MEMORANDUM DECISION AND ORDER - 4

incarceration on the defendant's health; (8) whether there is a strong chance that the defendant will succeed in obtaining a reversal of his conviction on appeal; and (9) whether the defendant was unusually cooperative with the government. *United States v. Garcia*, 340 F.3d 1013, 1019–21 (9th Cir. 2003).

In highlighting the aforementioned factors, the *Garcia* court emphasized that district courts have "broad discretion" in determining whether "exceptional reasons" exist in a particular case, and stated there should be "no limit on the range of matters the district court may consider." *Id.* at 1018–19. Rather, the court should examine the "totality of the circumstances," and, on the basis of that examination, "determine whether, due to any truly unusual factors or combination of factors" it would be unreasonable to incarcerate the defendant pending sentencing. *Id*. at 1019. In assessing the totality of the circumstances, the court must keep in mind the congressional policy that offenders who have committed crimes of violence should not, except in exceptional circumstances, be released pending sentencing or appeal. *Id*.

With these principals in mind, the Court turns to Drake's Motion.

## IV. ANALYSIS

To overcome the statutory presumption in favor of detention, Drake must establish with clear and convincing evidence that he will not flee and does not pose a danger to the community. 18 U.S.C. § 3143(a)(2). He must also satisfy the "additional condition" of demonstrating that exceptional reasons justify release from detention. *Garcia*, 340 F.3d at 1015; 18 U.S.C. § 3145(c). Drake's Motion fails to make either showing.

### 1. Danger to the Community or Risk of Flight

Notably, a suicidal defendant poses a risk of flight. *United States v. Cody*, 498 F.3d 582, 591 (6th Cir. 2007) (recognizing it is "logical" to "treat suicide as a form of flight"); *United States v. Workman*, 680 Fed. App'x 699, 702 (10th Cir. 2017) (stating suicide is one way that a defendant can fail to appear for court); *United States v. Tropiano*, 296 F. Supp. 284, 286 (D. Conn. 1968) (finding a defendant's statement that he would take his own life rather than serve a lengthy prison sentence evidenced a risk of flight). Drake argues he is not a suicide risk because he has been responsibly addressing his mental health treatment for some time. Dkt. 71-1, at 4. As noted, Drake also submitted letters from two of his mental health providers to support his contention that he is not suicidal.

In the first letter, Brianne Fagenstrom, Licensed Master Social Worker, confirmed Drake has been her weekly therapy patient since April 13, 2020. Dkt. 71-2, at 5. Fagenstrom reported Drake has not shown any evidence to suggest he is a suicide risk while he has been under her care. She stated, "[p]er his comprehensive diagnostic assessment completed on 4/13/2020, Jordan reported no history of suicide attempt and past passive suicidal ideation, which was assessed to be within normal limits." *Id.* Although Fagenstrom recognized Drake made suicidal statements at the time of his arrest in 2019, she noted he "was completely cut off from all supportive contact and reported to me he asked to call the suicide hotline only because he was not allowed phone calls and he was seeking support." *Id.* Fagenstrom concluded Drake is at a low risk for suicide. *Id.*

In the second letter, Sarah Trued, a Psychiatric Mental Health Nurse Practitioner who has been caring for Drake since August 22, 2017, similarly opined that Drake is not a

MEMORANDUM DECISION AND ORDER - 6

suicide risk. Trued explained Drake is at a low risk for suicide because "he does not have a history of past attempt, does not have a family history of suicide, does not use substances, has had a good response to treatment of his depressive symptoms, and is not impulsive." Dkt. 71-2, at 7. Like Fagenstrom, Trued also recognized Drake made suicidal statements at the time of his arrest. However, Trued explained it was her understanding such statements were "passive and without intent or plan and there were many acute stresses that contributed such as isolation, confusion about the situation and his charges, and his medications being held." *Id*.

As the Government notes, the letters from Drake's treatment providers are troubling because they conflict with other evidence in the record. For instance, while both providers contend Drake does not have a history of suicide attempts, Drake told United States Probation at the time of his arrest that he had attempted suicide in 2011 and 2017. Dkt. 13-2, at 3. Both providers also characterize Drake's suicidal statements after his arrest as "passive" and/or "without intent or plan." Dkt. 72-1, at 5, 7. However, a deputy in the medical unit at the Ada County Jail advised Probation that Drake "was placed on suicide watch after he expressed a detailed plan to harm himself which included cutting himself and bleeding out in the drain so it would be too late when someone found him." Dkt. 13-2, at 3. Given such inconsistencies, it appears that Drake may not have given his treatment providers a complete picture of his mental health history.

Further, it does not appear that Drake's providers are aware of information regarding Drake's current risk of suicide, or how the jury's verdict and his impending sentence have impacted his mental health. While both providers seem to have based their

MEMORANDUM DECISION AND ORDER - 7

conclusions on their treatment of Drake prior to the jury trial, Drake's mental health appears to have understandably deteriorated after his guilty verdict. For instance, on April 8, 2021, the United States Marshals Service Court advised the Court that Drake was placed on suicide watch shortly after the jury returned its verdict. In addition, Joel Osborne with United States Probation reached out to the Government on April 15, 2021, to express his concerns about release pending sentencing due to Drake's mental health issues and past suicide attempts. Dkt. 72, at 3.

Because the letters from his mental health providers conflict with other evidence in the record and do not address his current risk of suicide, the letters do not alleviate the Court's serious concerns regarding Drake's mental health. Moreover, the § 3142(g) factors also weigh in favor of Drake's detention pending sentencing.

    a. <u>Nature and Circumstances of the Offense</u>

In addition to the attempted use of interstate facilities to transmit information about a minor in violation of 18 U.S.C. § 2425, Drake was convicted of attempted coercion and enticement of a minor in violation of 18 U.S.C. § 2422(b). As noted, the latter constitutes a "crime of violence" under 18 U.S.C. § 3156(a)(4)(C). That Congress determined attempted coercion and enticement of a minor is a serious sexual offense is also illustrated by § 2422(b)'s mandatory minimum sentence of ten years and maximum penalty of life imprisonment.[2] 18 U.S.C. § 2422(b).

---

[2] When it was enacted, § 2422(b) initially penalized defendants convicted of violating the statute with a fine, imprisonment for up to fifteen years, or both. Pub. L. No. 105-314, § 102, 112 Stat. 2974, 2976 (1998)

(continued)

The circumstances of Drake's offense also illustrate its severity. Although Drake communicated with an undercover detective ("UC") posing as a 15-year old girl, § 2422(b) criminalizes solicitation of an adult who the defendant believed to be a minor. *United States v. Meek*, 366 F.3d 705, 722 (9th Cir. 2004). During their email and text exchange, the UC, posing as 15-year old "Kaylee Jo," repeatedly advised Drake that she was underage. Each time, Drake indicated he was excited about the prospect of having sex with her. He repeatedly attempted to reassure Kaylee Jo that underage sex was perfectly acceptable. *See generally* Dkt. 30-2. Drake confirmed he was "chill," "good," and "cool" with Kaylee Jo being only 15, and highlighted he had "a bit of a schoolgirl fantasy," and "a bit of a younger girl thing." *Id*. Drake also bragged about his sexual prowess and attempted to convince Kaylee Jo that sex with him would be enjoyable. *Id*.

After three hours of emails and texts, Drake left his home at around 1:30 am and drove to meet Kaylee Jo at her parents' house, while they were purportedly out of town. As the Government argued during trial, none of Drake's communications with Kaylee Jo expressed concern regarding her age or reluctance to meet her for sex. His decision to leave his home and drive across town in the early morning hours to meet Kaylee Jo also illustrates his excitement at the prospect of meeting a young girl for sex.

In short, the nature and circumstances of the offense illustrate it was an attempted

---

(codified as amended at 18 U.S.C. § 2422(b) (2012)). In 2003, Congress increased the maximum sentence to thirty years because it considered a § 2422(b) conviction to be one of "the most serious crimes of sexual abuse and sexual exploitation of children." H.R. Rep. No. 108-66, at 51 H.R. Rep. No. 108-66, at 51 (2003) (Conf. Rep.), reprinted in 2003 U.S.C.C.A.N. 683, 685. Congress later increased the penalties to the now-applicable mandatory minimum sentence of ten years and maximum sentence of life in prison. 18 U.S.C. § 2422(b).

crime of sexual violence against a child and do not support release. 18 U.S.C. § 3142(g)(1).

b. The Weight of the Evidence

When a pretrial detainee seeks release pending trial, the weight of the evidence of guilt "is the least important of the various factors," and may only be considered "in terms of the likelihood that the person will fail to appear or will pose a danger to any person or to the community." *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985). "Otherwise, if the court impermissibly makes a preliminary determination of guilt, the refusal to grant release could become in substance a matter of punishment." *Id*. (citation omitted).

The situation is different where, as here, a jury has heard the evidence against the defendant and returned a guilty verdict. As a result of the verdict, Drake is subject to a mandatory minimum sentence of ten years. If he is not released pending sentencing, the time Drake serves between the trial and his sentencing will count towards his ultimate sentence, and cannot be considered an additional punishment. Further, the jury heard and rejected Drake's entrapment defense and argument that he believed he was communicating with an adult who was role-playing as a 15-year old girl. The weight of the evidence in this case thus also leans against release. 18 U.S.C. § 3142(g)(2).

c. Defendant's History and Characteristics

Drake suggests his history and characteristics support release because he has no prior criminal history, no issue with drugs or alcohol, lives with his wife and two young children (for whom he is a stay-at-home father while his wife works full time), and because he complied with the terms and conditions of his pretrial release throughout the year and a

MEMORANDUM DECISION AND ORDER - 10

half between his release from pretrial detention and his trial. Dkt. 71-1, at 4. While such characteristics are positive, the Court finds the risk that Drake will commit suicide or otherwise flee before sentencing outweighs them. As discussed above, Drake has a significant history of mental health issues and suicidal ideation, which appear to have only been exacerbated by his conviction. Under such circumstances, the Court cannot, in good conscience, release Drake pending sentencing. 18 U.S.C. § 3142(g)(3).

      d.  <u>The Nature and Seriousness of the Danger Posed by Release</u>

Drake was convicted of a serious sexual offense. The nature and circumstances of Drake's offense, including his willingness to have sex with a 15-year old, indicate he is potentially a danger to the community should he be released. Further, Drake's concerning mental health history—both before and after trial—suggests he is at serious risk of fleeing or harming himself if he is released pending sentencing. The final § 3142(g) factor thus also weighs against release. 18 U.S.C. § 3142(g)(4).

Drake's inability to establish he is not likely to pose a danger to the community is dispositive of his request for release pending sentencing. *Garcia*, 340 F.3d at 1015 (explaining defendants convicted of a crime of violence must satisfy 18 U.S.C. § 3143 *and* 18 U.S.C. § 3145(c)). However, even if Drake was not a flight risk and a potential danger to himself and the community, he has not established there are "exceptional reasons why [his] detention would not be appropriate." 18 U.S.C. § 3145(c).

      2.  <u>Exceptional Reasons for Release</u>

Drake implies there are exceptional reasons for release because: (1) his conduct on pretrial release illustrates there are conditions that assure his appearance at future

proceedings while also protecting the community; (2) he has no criminal history; and (3) his crime was aberrational. Dkt. 71, at 3–4. The Court disagrees.

Drake's conduct on pretrial release is not an exceptional circumstance in light of the Court's finding that Drake *now* poses a flight risk and danger to himself. Nor, as the Government notes, does Drake's lack of a criminal history set him apart from other offenders convicted of the same offense. Dkt. 72, at 9. *See generally* Jason B. Sheffield, *From Chat Room to Courtroom: The Internet, Experts, and Entrapment*, 39-AUG Champion 34, 35 (2015) (explaining individuals charged with a violation of 18 U.S.C. § 2242(b), "share a common profile: They are typically well-educated and professionally accomplished men. . . . They have no criminal history, convictions, or arrests."); Kimberly J. Mitchell et al., *Police Posing as Juveniles Online to Catch Sex Offenders: Is It Working?*, 17 Sexual Abuse: J. Res. & Treatment 241, July 2005, http://www.unh.edu/ccrc/pdf/jvq/CV82.pdf (detailing the characteristics of enticement offenders, and noting "proactive investigations accessed an offender group that appeared somewhat less deviant in terms of sexual behavior and arrest history").

Finally, although there is some evidence Drake's crime was aberrational—such as the absence of child pornography located on his devices—there is also troubling evidence to suggest Drake's crime was not an anomaly. As the Government notes, Drake's statements to the UC and willingness to meet Kaylee Jo for sex, even though she repeatedly stated she was only 15, provide potentially significant insight into his sexual desires. Dkt. 72, at 6; Dkt. 30-2; Trial Exhibit 1013. Drake also failed an Eyedetect polygraph test on the issue of whether he had ever engaged in hands-on sexual contact with a juvenile. Dkt.

72-1. Under such circumstances, the Court cannot find Drake's crime was aberrational.

## IV. CONCLUSION

Because the Court lacks clear and convincing evidence to find Drake is unlikely to flee or pose a danger to any other person or the community, and because there are not exceptional reasons to justify Drake's release, the Motion for Release Pending Sentencing must be denied.

## IV. ORDER

Now, therefore, IT IS HEREBY ORDERED:

1. Drake's Motion for Release Pending Sentencing (Dkt. 71) is **DENIED**.

DATED: April 23, 2021

David C. Nye
Chief U.S. District Court Judge